IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| MARK GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:19-06006-CV-RK |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION; | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Plaintiff's appeal brought under 42 U.S.C. § 405(g) seeking review of Defendant Commissioner of Social Security Administration's ("SSA") denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). For the reasons below, the decision of the ALJ is **REVERSED** and **REMANDED** for further proceedings consistent with this Order.

**Standard of Review**

The Court's review of the ALJ's decision to deny disability benefits is limited to determining if the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). In determining whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis*, 239 F.3d at 966). The Court does not "re-weigh the evidence presented to the ALJ."

*Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)). The Court must "defer heavily to the findings and conclusions of the [ALJ]." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citation omitted).

## Background

In 2004, Plaintiff suffered a traumatic brain injury ("TBI") while serving in Iraq. Plaintiff was in an unarmed HUMVEE when an IED explosion occurred about 10-30 feet away. (Tr. 659.) Following the initial explosion, Plaintiff reports being disoriented and under fire for about six hours when another IED exploded. (*Id.*) After Plaintiff's military discharge, he held several full-time jobs, including work as a security guard. In February 2016, Plaintiff was assessed and ultimately received a 90% disability rating from the Department of Veterans Affairs ("VA"), primarily for narcolepsy from his TBI. In April 2016, Plaintiff quit his job as a security guard, which he maintains was to avoid being fired for falling asleep on the job. (Tr. at 47-48.) Plaintiff applied for social security disability on April 27, 2016, alleging disability beginning April 8, 2016, based on his TBI and narcolepsy, among other conditions.

## Discussion

By way of overview, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the thoracic, lumbar, and cervical spines; history of TBI; obstructive sleep apnea; obesity; migraines; and narcolepsy. The ALJ also determined that Plaintiff has the following non-severe impairments: post-traumatic stress disorder ("PTSD"); mood issues; history of a left shoulder sprain/biceps tendonitis; history of right carpal tunnel syndrome status post release in 2013; history of left navicular status post-surgery; service-related tinnitus; hypogonadism; an umbilical hernia repair in June 2016; and mild disorders of the left knee and ankle. However, the ALJ found that none of Plaintiff's impairments, whether considered alone or in combination, meet or medically equal the criteria of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1 ("Listing"). Additionally, the ALJ found that despite his limitations, Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> never climbing of ladders, ropes or scaffolds, occasional climbing of ramps and stairs, occasional balancing, stooping, kneeling, crouching, and crawling, frequent overhead reaching with the left upper extremity, frequent handling (gross manipulation) with the bilateral upper extremities, avoiding frequent exposure to extreme cold, extreme heat, wetness, fumes, odors, dust, gases, and poor ventilation, no exposure to vibration or hazards, and exposure; and no more than

> moderate noise (i.e., business office), noise level 3. [Plaintiff] is further limited to simple, repetitive, routine tasks.

(Doc. 2-3 at 21.) The ALJ further found that although Plaintiff is unable to perform any past work, Plaintiff can perform other jobs that exist in significant numbers in the national economy considering Plaintiff's age, education, work experience, and RFC. Consequently, the ALJ found that Plaintiff was not disabled as defined in the Act.

On appeal, Plaintiff primarily argues that substantial evidence does not support the ALJ's assessment of Plaintiff's narcolepsy because the ALJ failed to consider whether his narcolepsy was presumptively disabling per Listing 11.02 and failed to address or reconcile medical evidence of his narcolepsy. As discussed below, the Court agrees that remand is required on this basis.

## I. The ALJ's consideration of Plaintiff's narcolepsy

If the ALJ determines at step three of the sequential evaluation that a plaintiff has a listed impairment and meets the duration requirement, 20 C.F.R. § 404.1509, the plaintiff is disabled. There is no listing for narcolepsy, but in determining the severity of narcolepsy, "the closest listing to equate narcolepsy with is Listing 11.02, Epilepsy." Program Operations Manual System ("POMS") DI 24580.005 Evaluation of Narcolepsy, available at, https://secure.ssa.gov/poms.nsf/lnx/0424580005. An ALJ's failure to analyze the appropriate listed impairment is reversable error unless the record otherwise supports the ALJ's overall conclusion. *Brown v. Colvin*, 825 F.3d 936, 940 (8th Cir. 2016).

Here, in both a written statement filed by Plaintiff's attorney and at the outset of the hearing, Plaintiff's attorney argued that Plaintiff meets the criteria of the listed impairment for seizures, Listing 11.02. (Tr. 47-48, 301). However, the ALJ did not explicitly discuss Listing 11.02 in his decision. Rather, the ALJ expressly stated that he considered certain other listed impairments—1.02, 1.04, 11.18, 12.02, and 12.15—and found they were not met. The ALJ also incorrectly stated that Plaintiff "does not allege . . . that [he] has any impairments, either singularly or in combination," that meet one of the listed impairments. (Tr. 18-19.)

Plaintiff maintains that the overall record does not support the ALJ's decision because the decision did not resolve inconsistencies in the medical record. In particular, Plaintiff argues that the ALJ's reasons for discounting his allegations of disabling symptoms stemming from his narcolepsy show that the ALJ was improperly "playing doctor." The ALJ, in part, discredited Plaintiff's allegations concerning his narcolepsy symptoms because Plaintiff's complaint of

3

insomnia is inconsistent with narcolepsy, and because an MRI of Plaintiff's brain was normal. These reasons, cited by the ALJ to discredit Plaintiff's allegations, appear to be inconsistent with the POMS on evaluating narcolepsy. First, symptoms of narcolepsy can include insomnia. *See* POMS DI 24580.005 Evaluation of Narcolepsy (narcolepsy can be accompanied by disturbed nocturnal sleep); *see also* Narcolepsy Fact Sheet, NINDS, NIH Publication No. 17-1637, available at https://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/fact-sheets/narcolepsy-fact-sheet (narcolepsy symptoms include fragmented sleep and insomnia). In addition, the POMS on evaluating narcolepsy describes that "[t]here are no physical abnormalities in narcolepsy, and with the exception of sleep studies, laboratory studies will be normal." POMS DI 24580.005 Evaluation of Narcolepsy. Plaintiff also points out that the ALJ did not discuss the results of the VA's evaluation of Plaintiff's narcolepsy. (Tr. 658-669.)

In response, Defendant contends that even though the ALJ did not specifically discuss whether Plaintiff's narcolepsy equaled Listing 11.02 at step three, the ALJ's later discussion of Plaintiff's narcolepsy in assessing the RFC showed that the impairment, although severe, was not disabling. Defendant attempts to add clarity to the ALJ's findings regarding Plaintiff's narcolepsy that appear to conflict with the POMs. Defendant also maintains that the ALJ's discussion of the VA's disability finding shows he was aware of the VA's evaluation. Defendant argues that neither the VA evaluation nor the other medical evidence concerning narcolepsy support that Plaintiff's narcolepsy meets Listing 11.02.[1]

However, under these circumstances, the Court is hard-pressed to agree that the ALJ's later discussion of Plaintiff's narcolepsy in assessing the RFC is sufficient to demonstrate that Plaintiff's narcolepsy does not equal Listing 11.02. Specifically, Plaintiff's chief complaint for disability is narcolepsy, there is a lack of specific guidance on how adjudicators evaluate narcolepsy, and there are apparent inconsistencies with the ALJ's rationale for discrediting Plaintiff's complaints about narcolepsy and the POMS.

Defendant also cites to SSR 17-2p to support its position that the ALJ did not error by failing to expressly discuss Listing 11.02. SSR 17-2p provides guidance on how adjudicators make

---

[1] Specifically, the ALJ notes that Plaintiff's treatment providers repeatedly described Plaintiff as "alert" rather than tired, fatigued, drowsy, or nodding off during clinical visits. In addition, the ALJ pointed to Plaintiff's most recent annual wellness visit with his primary care physician during which Plaintiff admitted to experiencing insomnia, but denied fatigue, difficulty concentrating and memory difficulties. (Tr. 746.) Finally, the ALJ noted that Plaintiff's sleep difficulties, including those related to narcolepsy are managed with medication. (Tr. 23.)

4

findings at step three.² SSR 17-2p contemplates the scenario where an ALJ makes a conclusory determination as to whether a listed impairment is met and provides an analysis later in the sequential evaluation process. But this case is different. Here, the ALJ failed to make any express determination of whether Plaintiff met Listing 11.02.

In this case, the Court is unable to determine whether substantial evidence on the record as a whole supports a finding that Plaintiff did not meet Listing 11.02.

## Conclusion

Having carefully reviewed the record before the Court and the parties' submissions on appeal, it is therefore **ORDERED** that pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings. On remand, the ALJ will explicitly analyze whether Plaintiff meets Listing 11.02.

**IT IS SO ORDERED.**

                                                  s/ Roseann A. Ketchmark
                                                  ROSEANN A. KETCHMARK, JUDGE
                                                  UNITED STATES DISTRICT COURT

DATED: March 12, 2020

---

² In relevant part, SSR 17-2p states:
[A]n adjudicator at the hearings or AC level must consider all evidence in making a finding that an individual's impairment(s) does not medically equal a listing. If an adjudicator at the hearings or AC level believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.